No. 14,374.

Estate of Chucovich.

The People *v.* Jovanovich et al.
(83 P. [2d] 328)

Decided October 3, 1938.

Mr. Byron G. Rogers, Attorney General, Mr. Henry E. Lutz, Assistant, for the people.

Mr. Benjamin E. Sweet, Mr. Malcolm Lindsey, Mr. Frank L. Hays, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

Vaso L. Chucovich, a naturalized citizen of this country, died at Denver in December, 1933. His will was duly admitted to probate in the county court, where his estate, valued at over a million dollars, is being administered. By paragraph 12 of the will, he provided for a memorial to the late Robert W. Speer, formerly mayor of Denver, who was his most intimate friend. He named Peter A. Jovanovich and John S. Chucovich, his nephews, as executors of the will and from the date of its admission to probate to the present time, they have acted as trustees to carry out certain directions contained therein. Over a period of about three years, due to uncertainty and other intervening conditions, they have been unable to finally execute the provisions of said paragraph 12 relative to this memorial, which is as follows:

"Twelfth: I hereby authorize, empower and direct my executors and trustees hereinafter named, to construct and establish an ornamental fountain or gate or arch or other suitable monument of a permanent and ornamental nature, on or at an entrance to the Civic Center, or on or at an entrance to some other public park or public grounds in the City and County of Denver, State of Colorado; and I authorize and direct my executors and trustees to expend and pay for the construction, establishment and maintenance of the same, such sum or sums of money as may be necessary therefor, not exceeding the sum of One Hundred Thousand Dollars ($100,000.00). It is my desire and direction that this be done as a memorial in honor and memory of the late Mayor Robert W. Speer, and that some suitable inscription be placed

thereon showing that it is erected as such memorial. While I have indicated the nature of the memorial to be established and constructed and prefer that it be located at or near the Civic Center, I authorize and grant authority to my executors and trustees hereinafter named (after conference with the Mayor and other City officials they may deem advisable to consult) to select the design of same, the material to be employed therein and the construction thereof and the place of its location and maintenance in said City and County, to the end that the real intent and purpose of this particular direction in my Will shall be carried out in good faith. And such memorial shall be turned over to and become and remain the property of the City and County of Denver.''

On March 1st, 1935, the executors petitioned the county court to set aside the sum of $100,000, to be used and expended toward the carrying out of the provisions of paragraph 12, and the petition being granted they as trustees, now are holding this fund for the purpose indicated. After conference with the mayor and other city officials, the trustees endeavored to select a suitable design for a memorial. They first obtained the services of a sculptor from Jugoslavia, a fellow countryman of themselves and the testator, who was directed to design a fountain or statute to be placed on the civic center in Denver. Protests appearing in the public press caused the withdrawal of the selection of the foreign sculptor. Arnold Ronnebeck, a noted sculptor, upon request of the trustees, submitted several designs. After various proceedings and delays, a design for a fountain by Ronnebeck was chosen and submitted to the city. By inaction this design was neither accepted nor rejected by the Denver Art Commission, and after the passing of several months, Ronnebeck withdrew his designs and models theretofore submitted, so that petitioners might proceed with other plans. The trustees, after further conference with the mayor and other city officials, de-

cided to construct a hospital building upon the grounds of the Denver General Hospital as a memorial under the paragraph of the will. The plans and specifications therefor, setting out the matters of ornamentation, a memorial lobby and the exterior inscription, were drawn, which inscription would characterize and establish the structure as an appropriate memorial, and this was approved by the city officials.

At this point the trustees sought instructions from the court to which they presented their petition asking for directions upon the following questions:

"Is the hospital building as herein described (with such modifications as are referred to above) a 'memorial' and a 'monument,' and within the terms of and in compliance with the Twelfth Paragraph of the Will of Vaso L. Chucovich?"

"May your petitioners as trustees now proceed to construct said hospital building upon the grounds of the Denver General Hospital in the City and County of Denver with funds set aside for such purpose, pursuant to the order of this court, dated March 1, 1935?"

The City and County of Denver answered, admitting all allegations of the petition, and the Attorney General appeared for the state of Colorado and answered admitting the general allegations of the petition, but put in issue the question of the right of the trustees, under the terms of the will, to construct the proposed hospital as a memorial, and demurred to the petition upon the ground that it failed to state any legal reason why they could not carry out the provisions of said paragraph twelve. Upon hearing the county court found that the proposed hospital building "is a monument of permanent and ornamental nature * * * and within the terms of the will," and by its finding and decree authorized the trustees to proceed with the construction thereof. To this decree the attorney general assigns error in substance as follows: That the court erred in so construing paragraph 12 as to authorize the erection of the hospital,

in that under the terms and requirements of paragraph 12, only an arch, a gateway or a fountain or some similar monument might be so erected; and in holding that the proposed hospital is of an "ornamental nature."

By the terms of paragraph 12, above quoted, a trust of a charitable nature is created in which the rights of heirs is not involved. Such bequests are favored by the courts, and in the interpretation of the creative provisions, the application of liberal rules may be indulged. The object of our inquiry is to ascertain the intention of the testator, which, under well established legal principles and in keeping with right and reason, must control the interpretation. Assistance in this field from other cases is limited, due to dissimilarity between the words and phrases here employed by the testator and those found in other similar documents presented for interpretation in other jurisdictions. The paragraph of the will here involved, must be considered in its entirety in the endeavor to discover the real purpose of the bequest. From a first reading, it is apparent that the primary and only purpose of the provision, is to create and establish a memorial to a departed friend. It is equally apparent that the testator did not place limited restrictions upon the trustees named, but on the contrary, was satisfied to forego his indicated preference and abide by the discretion of the trustees and city officials, so long as the real intent of establishing a memorial was finally carried out.

It is the contention of the Attorney General that the doctrine of ejusdem generis should control in the construction of the paragraph in question, if there is any doubt as to the testator's directions, and that the discretion of the trustees is confined to the selection of some "other suitable monument of a permanent and ornamental nature" of like kind, such, for instance, as a column, statue, obelisk, pavilion, or shaft. Generally this is a rule of statutory construction and when so ap-

plied is always to be used in connection with other important rules, not the least of which is a determination of the intent of the legislative body. In no event should the rule be applied within narrower confines than such intention, which is to be gathered from the recognized meaning of the words employed.

The testator gave a general indication of the nature of the memorial which he wished and directed to be established. In this he did not definitely express his desire to the exclusion of other works and did not confine his directions to any one specific thing. He said, "An ornamental fountain or gate or arch or other suitable monument of a permanent and ornamental nature." He was not positive in his desire as to its location and fixed no definite sum for its cost within the specified limit. It is clear that whatever else might result, it was his specific and clearly stated desire that it be "a memorial in honor and memory of the late Mayor Robert W. Speer." This memorial might consistently be in the form of a building such as is proposed by the trustees, and effectively speak the wishes of the donor. This is in harmony with the herein announced broad and liberal rule of construction, and is permissible under the general context of the paragraph in question.

The Attorney General suggests that the author of this will employed and followed the language used in the will under consideration in the case of *Haggin v. International Trust Co.,* 69 Colo. 135, 169 Pac. 138, which involved a specific direction that the residue of the estate "be devoted and applied to the construction of an ornamental gate or arch of stone," and cites the decision in support of his contention here. But in that case no discretion was vested in anyone to build anything other than of the nature mentioned. In the case at bar extended discretion is lodged in the trustees by the use of the words "or other suitable monument of a permanent and ornamental nature."

The judgment of the trial court was right and is therefore affirmed.

Mr. Justice Bakke not participating.